IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT ARNOLD, | ) |
| | ) Case No: |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE: |
| | ) |
| MERCYHURST UNIVERSITY | ) |
| 501 E. 38th Street | ) |
| Erie, Pennsylvania 16546 | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**
**(Jury Trial Demanded)**

NOW COMES Plaintiff, Robert Arnold, by and through undersigned counsel, and for his cause of action against the Defendant, Mercyhurst University, states the following:

**NATURE OF THE ACTION**

1. This action alleges that Defendant, through the acts and omissions of its employees and/or agents, maliciously and willfully discriminated against Plaintiff due to his disability. Throughout the 2022-2023 academic school year, Plaintiff, a student suffering from multiple disabilities, made several reasonable accommodations to Defendant in order to continue his educational endeavors at Mercyhurst University. Defendant elected to refuse to provide reasonable accommodations while simultaneously making discriminatory remarks about Plaintiff's disabilities and his ability to perform academically. The University's discriminatory and unlawful conduct resulted in adverse academic standing which Defendant then used to remove him from the University.

## JURISDICTION

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this matter presents a federal question under the Americans with Disability Act ("ADA") codified as 42 U.S.C. § 12182 *et seq.*, as well as the Rehabilitation Act of 1973 ("Rehabilitation Act"), codified as 29 U.S.C. § 794.

3. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of jurisdiction and costs.

4. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1376 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. The events giving rise to this lawsuit occurred in Erie, Pennsylvania, which is located in the Western District of Pennsylvania.

6. Venue is proper in the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1391 (b)(2), as the events giving rise to Plaintiff's claims occurred in this jurisdiction.

## PARTIES

7. Plaintiff, Robert Arnold, is a natural person who resides in the State of Ohio. At all relevant times, Plaintiff was enrolled as a full-time student at Mercyhurst University.

8. Defendant Mercyhurst University, is a Pennsylvania nonprofit corporation with a principal place of business located at 501 E. 38th Street, Erie, Pennsylvania 16504. At all relevant times, Defendant owned, operated, controlled, and maintained the private University, as well as its curriculum.

9. Defendant Mercyhurst accepts federal funding, and is thereby subject to certain federal laws, including the ADA and Rehabilitation Act.

10. At all relevant times, Defendant acted through its respective agents, officers, administrators, and employees, who were acting within the score of their authority and employment in furtherance of the business and operation of Mercyhurst University.

## FACTUAL ALLEGATIONS

11. Mr. Arnold has suffered from lifelong disabilities, including Mitochondrial Disease, which causes Mr. Arnold's body to work improperly from a cellular level, creating a wide range of issues in his day-to-day life.

12. Mr. Arnold has also been diagnosed with Hepatic Fibrosis, Dysautonomia, Severe Gastroparesis, Granulocyte Deficiency, Hypoglycemia, Small Fiber Neuropathy in all extremities, and Extreme Fatigue.

13. These diagnoses substantially limits one or more of Plaintiff's major life activities, as set forth by the ADA.

14. Mr. Arnold was, at all relevant times, disabled due to these conditions.

15. Despite these disabilities, Mr. Arnold attended and graduated cum laude from John Carroll University with a 3.39 GPA as a Chemistry major and Biology minor. While at John Carroll, Mr. Arnold received reasonable accommodations to assist him academically.

16. During his time at John Carroll, Mr. Arnold completed roughly 888 hours of patient care in home healthcare and nursing home settings, and an additional 53 hours shadowing a Physician Assistant, before joining the Physician Assistant program ("the Program") at Mercyhurst University.

17. At the time he applied to the Program, Defendant knew or had reason to know of Mr. Arnold's diagnoses and disabilities.

18. Mr. Arnold was accepted into the Program and begun the Program in May of 2022.

19. During the summer semester, Defendant provided Mr. Arnold with reasonable accommodations such as flexible attendance with remote and recorded instruction, notetaking assistance, and extended test time. With these accommodations in place, Mr. Arnold earned a 3.222 GPA and was meeting all academic requirements set forth by the Program.

20. On November 2, 2022, Mr. Arnold was involved in a car accident on his way to a Program-mandated conference. Due to the crash, he was diagnosed with an acute concussion. Mr. Arnold suffered from headaches, nausea, and blurred vision.

21. The diagnosis subsequent to the November 2, 2022 car accident is considered a disability pursuant to the ADA.

22. On Sunday, November 6, Mr. Arnold emailed Robin Newhook ("Newhook"), the Chair/Program Director of the Program, requesting to move one exam, which was scheduled for Tuesday, November 8, to Thursday, November 10. Mr. Arnold provided Newhook with documentation of his diagnosis. This request was a reasonable disability accommodation for his concussion, which was documented in his ER discharge papers and provided to the University.

23. Newhook did not respond to Mr. Arnold's email.

24. Instead, Newhook pulled Plaintiff aside on November 7 and denied his request in person. When Mr. Arnold attempted to explain the basis for his requested accommodation, Newhook interrupted him, and stated, "we don't do that in this program."

25. In response to his conversation with Newhook, Mr. Arnold sought assistance from Megan Dougan ("Dougan"), the Associate Director, Clinical Director and Associate Professor at Mercyhurst University.

26. Mr. Arnold asked Dougan for the reasonable accommodation of moving his November 8 exam. Additionally, Mr. Arnold asked Dougan for other accommodations, such as a modified testing schedule and staggered exams, even if it meant he took exams before other students. In response, Dougan admonished Mr. Arnold for having disabilities, telling him that he was a "bad student," that she "wouldn't want him treating her child," and opining that he was going to "kill someone."

27. After denying Mr. Arnold's request for test taking accommodations, Dougan referred Mr. Arnold to Susan Reddinger ("Reddinger"), Mercyhurst University's ADA Coordinator. However, Reddinger rubber-stamped the previous denials, citing these denials in her decision.

28. Mr. Arnold was denied his request for reasonable test taking accommodations in due to his disabilities.

29. On December 14, 2022, Mr. Arnold met with Dougan to discuss his grades, which had declined after he was denied reasonable accommodations by Defendant.

30. During this meeting, Dougan assured Mr. Arnold that he would not be placed on academic probation, as his cumulative GPA was not below 3.0 and he did not have a final grade of "C" in more than one-third of his Fall 2022 courses.

31. Despite this statement, Dougan saw Mr. Arnold later that day and rescinded her previous statement, telling Mr. Arnold that he would be placed on probation.

32. Newhook placed Mr. Arnold on academic probation on January 20, 2023. The Probation Notice received by Mr. Arnold stated that he was placed on probation because he was "[r]eceiving a final grade of C in more than one-third (1/3) of the courses for the didactic fall 2022 semester."

33. Mr. Arnold did not receive a grade of C in more than one-third (1/3) of his courses. Instead, Mr. Arnold had received a grade of C in one of his eight classes. However, Defendant used two C+ grades to place Mr. Arnold on probation, in violation of Mercyhurst Policy, which differentiates grades of C+ and C. Under the Policy, students may only be placed on probation if they received a final grade of C or worse in one-third of classes.

34. After placing Mr. Arnold on academic probation, Defendant failed to inform Plaintiff of his rights to an appeal which are set forth in the Student Handbook, which resulted in Mr. Arnold proceeding into the following semester on academic probation.

35. On December 20, 2022, Mr. Arnold was involved in another car crash on his way home from campus. He sustained another concussion after hitting a tree.

36. Mr. Arnold's doctor suggested he see a concussion specialist due to his symptoms of worsening dizziness, headaches, nausea, and blurred vision.

37. The diagnosis subsequent to the December 20, 2022 car accident is considered a disability pursuant to the ADA.

38. Mr. Arnold began to vomit out of his G-Tube on a near daily basis. He also started to have worsening dysautonomia and passed out twice, frequently having to catch himself before falling.

39. Upon his return to campus for the spring semester, Mr. Arnold was required to attend biweekly meetings with Dougan. During these meetings, Dougan routinely told Mr. Arnold

he looked terrible, and that he could not wear his IV on rotations because it would not be a "good look" to patients.

40. Prior to attending Mercyhurst, Mr. Arnold had completed nearly 900 hours of patient care while wearing an IV.

41. At these meetings, Mr. Arnold again asked Dougan for reasonable accommodations. His requests included staggering his exam schedule, even if it meant taking an exam early; receiving class slides in advance; and using his already approved flexible attendance time, including remote and/or recorded classes in an effort to attend various doctors' appointments, which were located in Ohio and Pennsylvania. Dougan denied all of these requests.

42. When these requests were denied without explanation, Mr. Arnold turned to. Reddinger, who again rubber-stamped Dougan's denial of his reasonable accommodations.

43. In denying Plaintiffs requests, Defendant improperly placed Plaintiff in a position where prioritizing his health and attending doctors' appointments, would be negatively impact his academic progress.

44. As a result of Defendant's denials, Mr. Arnold was unable to schedule and attend necessary doctor appointments, as he feared that he would fail out of the Program.

45. During the Easter weekend, Mr. Arnold was finally able to return home and see his doctors. Mr. Arnold was diagnosed with Post-Concussive Syndrome and other post-trauma physical and cognitive impairments, including vestibular and ocular dysfunction.

46. Mr. Arnold's concussion specialist recommended that he begin Vestibular Rehabilitation. His specialist wrote a letter dated April 7, 2023, suggesting a non-exhaustive list of accommodations for his concussion, including early access to class notes and outlines, and extra time for assignments and tests.

47. Mr. Arnold presented this letter to Defendant, along with a request for the necessary accommodations. On April 18, 2023, Mr. Arnold met with Dougan about his already approved-flexible attendance to begin Vestibular Rehabilitation. Dougan denied his request without explanation. At the conclusion of the meeting, Dougan suggested that Mr. Arnold meet with Newhook about Mercyhurst's Deceleration and Withdrawal Policy.

48. In previous discussions with Defendant's employees and/or agents, Mr. Arnold expressed that he was not interested in the Deceleration Program, as there was no guarantee he would be re-admitted into the program. Upon readmission, if any, Mr. Arnold would be forced to restart the program from the beginning.

49. On April 24, 2023, Mr. Arnold met with Newhook to discuss and request flexible attendance to begin Vestibular Rehabilitation, as well as being permitted to obtain class notes early. Newhook again denied these requests, opining that the accommodations would not help Mr. Arnold. When Mr. Arnold attempted to provide Newhook with his medical records, Newhook refused, telling him, "It doesn't make a difference."

50. In light of Defendant's refusal to accommodate Mr. Arnold, Mr. Arnold requested permission for medical deceleration. Newhook denied this request because Mr. Arnold was already on academic probation.

51. Without reasonable accommodations, and with his health suffering greatly, Mr. Arnold completed his classes with a cumulative GPA of 2.981.

52. On May 10, 2023, Mr. Arnold met with Newhook and Dougan. Mr. Arnold was told he was being dismissed from the Program because he had not achieved a final cumulative GPA of 3.0. When Mr. Arnold explained that his GPA would have been better had he received

reasonable disability accommodations following his concussions, Dougan declared, "I don't view it as my responsibility to give you special treatment."

53. Again, Dougan and Newhook failed to notify Mr. Arnold of his right to appeal the dismissal.

54. After requesting information on his right to appeal, Mr. Arnold timely appealed his dismissal on May 22, 2023. As part of his appeal, Mr. Arnold argued that:

   a. The Program materially breached its contractual obligations when it placed him on academic probation, denied his medical deceleration request, and dismissed him from the program;

   b. The Program violated due process and fundamental fairness when it denied him notice of his appeal rights; and

   c. The decision to dismiss him was the direct result of disability discrimination.

55. In his appeal, Mr. Arnold argued that Defendant incorrectly placed him on academic probation, as Defendant improperly used Mr. Arnold's C+ grades against him in reaching the conclusion that he would be placed on probation. His appeal noted that the Policy states that "a student who receives a final grade of 'C' in more than one-third (1/3) of the courses for any given didactic semester will be placed on academic probation." The Policy also recognizes that "C+" is a grade higher than "C."

56. On May 26, 2023, Dyan Jones ("Jones"), the Dean of Zurn College of Natural and Health Sciences, issued an Appeal Decision. In this Decision, Jones acknowledged that Defendant should not have placed Mr. Arnold on academic probation for the spring 2023 semester.

57. Rather than re-admit Mr. Arnold and provide the necessary and reasonable accommodations, Jones granted Mr. Arnold's request for a medical deceleration, while ignoring

9

that Mr. Arnold requested deceleration only after his accommodation requests were rejected without reason or explanation. According to the Decision Letter and Mercyhurst Policy, "students are not automatically readmitted following a deceleration and withdrawal." Instead, students must reapply, and will only be considered if, amongst other things, have an overall GPA of 3.2 or higher.

58. At the time Jones unilaterally placed Mr. Arnold into the deceleration program, she knew that Mr. Arnold had a GPA below 3.2, and thus, would be unsuccessful in any readmission attempt.

59. Defendant improperly and unlawfully discriminated against Mr. Arnold based on his disabilities when they, among other things, denied his reasonable requests for accommodation while its employees and/or agents admonished him for his disabilities.

60. Defendant constructively dismissed Mr. Arnold from the Program, in violation of its obligations of fundamental fairness when they, among other things:

   a. Denied Plaintiff's reasonable requests for testing accommodations;

   b. Improperly placed Plaintiff on academic probation despite the fact that he did not meet the criteria;

   c. Ignored that Plaintiff's declining grades were a direct result of his disability and their refusal to provide accommodations;

   d. Continued to refuse Plaintiff's requests for accommodations after his second car accident;

   e. Told Plaintiff that he should request a medical deceleration because they would not accommodate him;

   f. Improperly dismissed him from the Program despite the fact that his academic struggles were a direct result of Defendant's employees/agents rejecting his reasonable accommodations requests; and

g. After acknowledging their own mistakes, unilaterally placed Plaintiff in a medical deceleration, knowing that his GPA made Plaintiff ineligible for readmission, and that he was essentially dismissed from the Program.

## COUNT I:
### Violation of ADA

61. Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten and replead herein and further state as follows.

62. Mercyhurst University is bound by the obligations imposed by the Americans with Disabilities Act.

63. ADA requires institutions, such as Mercyhurst, to provide reasonable modifications in policies, practices, or procedures unless such modifications would fundamentally alter the nature of goods, services, facilities, privileges, advantages, or accommodations involved.

64. At all relevant times, Defendant was notified and aware of Mr. Arnold's disabilities.

65. As described herein, Mr. Arnold requested reasonable accommodations throughout the academic school year.

66. These requested accommodations, if provided, would not have fundamentally altered the Physician Assistant program at Mercyhurst.

67. Defendant refused, and therefore failed to provide the reasonable accommodations described herein.

68. Such failure constitutes a violation of the ADA.

69. Had Defendant provided the requested and reasonable accommodations, Mr. Arnold would have continued as a student in good standing at Mercyhurst.

70. Due to Defendant's violation of the ADA, Mr. Arnold was effectively removed from the Program without the ability to be readmitted, as described herein.

71. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff suffered damages and continues to suffer damages.

72. As a direct and proximate result of Defendant's violations of ADA, Plaintiff was deprived of access to education opportunities. Plaintiff is entitled to monetary and injunctive relief.

## COUNT II:
## Violation of Section 504 of the Rehabilitation Act of 1973

73. Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten and replead herein and further states as follows.

74. Section 504 of the Rehabilitation Act of 1973 provides, in pertinent part, that: "No otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

75. As described herein, Mr. Arnold is an otherwise qualified individual with handicaps as pursuant to Section 504.

76. Mr. Arnold had a record of such handicaps, which were known by Defendant.

77. As described herein, Mr. Arnold was excluded from and/or denied the benefit of Mercyhurst's educational programming, solely by reason of his handicap.

78. As a direct and proximate result of Defendant's violations of Section 504 of the Rehabilitation Act, Plaintiff suffered damages and continues to suffer damages.

## COUNT III:
## Violation of Pennsylvania Human Relations Act

79. Plaintiffs incorporate all previous paragraphs and allegation as if fully rewritten and replead herein and further states as follows.

80. The Pennsylvania Human Relations Act prohibits discrimination in postsecondary institutions based on a student's disability or handicap.

81. As described above, Defendant discriminated against Plaintiff based on his disability and/or handicap.

82. Defendant's conduct was intentional, deliberate, willful, and in callous disregard of Plaintiff's rights.

83. As a direct and proximate result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff suffered damages and continues to suffer damages.

84. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies pursuant to the Pennsylvania Human Relations Act.

## COUNT IV
## Breach of Contract

85. Plaintiff repeats and realleges each and every allegation set forth above as if fully rewritten herein.

86. At all relevant times, a contractual relationship existed between Plaintiff and Mercyhurst.

87. The promises contained in Mercyhurst's Physician Assistants Handbook ("Handbook") are legally binding obligations.[1]

88. Defendant was required to act in accordance with the University's Handbook.

89. Based on the facts and circumstances set forth in this Complaint, Defendant materially breached its express and/or implied agreements with Plaintiff by, amongst other things, wrongfully placing him on academic probation, despite the fact that he did not meet the criteria for such sanction under the Handbook.

90. Mercyhurst's breach of said contract led to his eventual dismissal from the Program, as well as his inability to be readmitted.

91. As a direct and proximate result of Defendant's breach of contract, Plaintiff suffered damages and continues to suffer damages.

92. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A. Award Plaintiffs compensatory damages in an amount to be shown at trial;

B. Award Plaintiffs punitive damages in an amount to be shown at trial;

C. Award Plaintiffs reasonable attorneys' fees, costs, and disbursements;

---

[1] Although Plaintiff at one point had access to the Handbook, he no longer has access. Defendant, however, is in exclusive possession of the relevant Handbook. Plaintiff therefore is unable to attach a copy of the Handbook, but incorporates the Handbook herein.

D.  Award Pre and post judgement interest; and

E.  Grant Plaintiffs such additional relief as the Court deems just a proper.

          Respectfully Submitted,

          */s/ Eric Long*
          Eric F. Long (0093197) (Pending Pro Hac Vice Admission)
          Tyler J. Walchanowicz (0100115) (Pending Pro Hac Vice Admission)
          Friedman Nemecek Long & Grant, L.L.C.
          The IMG Center
          1360 E. 9th Street, Suite 650
          Cleveland, OH 44114
          T: (216) 928-7700
          F: (216) 820-4659
          efl@fanlegal.com
          tjw@fanlegal.com